Filed 1/11/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CATLIN INSURANCE COMPANY, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DANKO MEREDITH LAW FIRM, INC., et al., <br><br> Defendants and Appellants. | A160358 <br><br> (San Mateo County Super. Ct. No. 20CIV00107) |

## I. INTRODUCTION

These consolidated appeals present a narrow question of civil procedure: When (1) a defendant files an anti-SLAPP motion that explicitly defers a request for fees to a separate, subsequent motion, and (2) the plaintiff files a voluntary dismissal, thus mooting the entire action, must the trial court rule on the merits of the anti-SLAPP motion as a predicate to an anticipated fees motion, or can it defer consideration of the merits until the defendant actually files a fees motion? The trial court here chose the latter course, declining to address the merits of two anti-SLAPP motions that had been mooted by a voluntary dismissal.

The disappointed anti-SLAPP movants, appellants Michael S. Danko (Danko) and the Danko Meredith Law Firm, Inc. (the Danko Meredith Firm) (collectively, the Danko Appellants), claim this was error. They contend the trial court not only had jurisdiction but also a duty to rule on the merits of their anti-SLAPP motions, despite the absence of any pending fee request.

1

Such a ruling was mandatory, they argue, in order to supply a basis for their entitlement to a fee award in a prospective motion for recovery of fees that they had yet to make. We disagree and affirm.

## II. BACKGROUND

Respondent Catlin Insurance Company, Inc. (Catlin) filed a complaint against the Danko Appellants in October 2019, alleging in substance as follows.

In the fall of 2017, Catlin settled one of the claims against its insured, Able Air Corporation, in a wrongful death lawsuit known as the Boolen case. Pursuant to the settlement, Catlin paid $180,000 to the trust account of the Danko Meredith Firm, plaintiffs' counsel in the Boolen case. Catlin then mistakenly paid the same amount a second time to the same trust account. The Boolen case went to trial in 2018 on other claims, eventually resulting in a defense verdict. Catlin discovered its payment error in July 2019 and requested return of the mistaken overpayment, but Danko, a principal of the Danko Meredith Firm, declined the request. Pointing to a release of future claims as part of the pretrial settlement and to a posttrial waiver of costs and appellate rights, he claimed Catlin had either released or waived any right to return of the overpayment.

Responding to Catlin's complaint seeking return of the mistakenly paid funds in January 2020, the Danko Appellants filed what are commonly known as anti-SLAPP[1] motions under Code of Civil Procedure[2] section 425.16. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 640.) Both motions asked the trial court to strike the

---

[1] "SLAPP," of course, is shorthand for a strategic lawsuit against public participation. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 905 (*Kyle*).)

[2] Undesignated statutory references are to the Code of Civil Procedure.

complaint and stated they would request attorney fees under section 425.16, subdivision (c), pursuant to a "subsequent, separate motion." On January 17, 2020, Catlin voluntarily dismissed its complaint and a few days later served notice of the dismissal.

After issuing a tentative ruling that Catlin's voluntary dismissal had mooted the action, thereby mooting the anti-SLAPP motions as well, Judge Nancy Fineman held a hearing on March 13, 2020. At the hearing, the Danko Appellants asked Judge Fineman to rule on the anti-SLAPP motions as a "predicate" for going forward with their fee motions. She declined to do so. Using a shorthand reference to both motions in the singular, she explained how the governing rules work. "[Y]ou can either do it two ways, you can either bring it when you bring your [anti-]SLAPP motion, your motion for attorneys' fees, or you can bring it separately afterwards. You said that you were going to bring it separately. I'm saying if you want me to consider the attorneys' fees, bring it all together as one motion."

Judge Fineman further explained: "If you want to bring a motion for attorneys' fees, you can bring a motion for attorneys' fees that shows why I should grant the [anti-]SLAPP motion, but we're not going to do that extra work until we know for sure you're going to bring a motion for attorneys' fees. So if you want to bring a motion for attorneys' fees, show why we should grant the [anti-]SLAPP from A and B because I am not going to do all of the work twice." Danko, appearing for the Danko Meredith Firm, asked Judge Fineman to direct him to file an attorney fees motion, to which the court responded, "I'm not going to [do that] . . . because I'm looking at it and I'm trying to tell you without telling you that I'm not sure that you really want to bring a motion for attorneys' fees."

3

On the same day as the hearing, Judge Fineman adopted her tentative ruling, simply stating, "The special motion to strike is MOOT." Danko filed and electronically served a notice of entry of that order on April 17, 2020. Neither Danko nor the Danko Meredith Firm ever filed a subsequent fees motion. The Danko Meredith Firm prepared a judgment of dismissal, which was entered on June 5, 2020. The judgment of dismissal states that it is based on Catlin "having filed with the Clerk of this Court a request for entry of dismissal of the entire complaint, and the Clerk having entered the dismissal pursuant to [Catlin's] request on January 17, 2020."

On June 10, 2020, the Danko Meredith Firm filed its notice of appeal from the March 13, 2020 order declaring the anti-SLAPP motions moot. Danko filed his notice of appeal from the same order eight days later, on June 18, 2020. Notices of the filing of the appeals were served by the trial court clerk, respectively, on June 11, 2020, and June 19, 2020.

## III. DISCUSSION

### A. *Appealability*

Before turning to the merits, we must address Catlin's three challenges to our jurisdiction.

First, Catlin claims the Danko Appellants have appealed solely from the ruling on their ability to seek fees, not from the trial court's finding of mootness itself. Their appeals must be dismissed, Catlin argues, because an order granting or denying attorney fees on an anti-SLAPP motion is not appealable. (*Doe v. Luster* (2006) 145 Cal.App.4th 139, 145–146.) We disagree with that spin on the appeals before us, as the Danko Appellants explicitly contend the court erred in ruling that the anti-SLAPP motions were moot. Moreover, the appealability of an order awarding or denying fees is

4

irrelevant here because Judge Fineman never ruled on the Danko Appellants' entitlement to fees.

Second, Catlin argues the Danko Appellants forfeited their right to appeal the March 13, 2020 order because they failed to file a separate fees motion. We agree that the Danko Appellants could have simplified matters and avoided the need for these appeals by filing a separate fees motion that included the same arguments from their anti-SLAPP motions on the merits. Indeed, it appears to be common practice for defendants to do so when a plaintiff voluntarily dismisses its action while an anti-SLAPP motion is pending. (See, e.g., *Liu v. Moore* (1999) 69 Cal.App.4th 745, 749 (*Liu*); *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1451 (*Tourgeman*).) However practical it might have been to file a separate fees motion, the failure to do so did not forfeit the right to appeal the March 13, 2020 order. Whether the failure to file a timely motion for recovery of fees effected a waiver of any claim to recovery of fees is another matter, as we explain below, but it does not affect our appellate jurisdiction.

Third, Catlin argues the appeals here are moot because the Danko Appellants appealed from the March 13, 2020 order declaring the anti-SLAPP motions moot, rather than from the June 5, 2020 judgment. We disagree. Catlin requested voluntary dismissal of the action on January 17, 2020, and the dismissal was immediately effective upon the tender of the request to the clerk. (§ 581, subd. (b)(1); *Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.* (1988) 202 Cal.App.3d 921, 926, fn. 4, 931.) The court had no authority and no reason to enter a judgment of dismissal months later, so that judgment was void. (*Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 261 ["voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that

5

case, except for the limited purpose of awarding costs and statutory attorney fees"]; *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89 [orders after voluntary dismissal are void].)

Although the Danko Appellants had no ability to appeal the January 17, 2020 entry of voluntary dismissal (*Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890, 898 [voluntary dismissal is generally not appealable]), the March 13, 2020 order declaring the anti-SLAPP motions moot was equivalent to a denial of the motions, and such denials are appealable postjudgment orders. (§ 425.16, subd. (i); *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220.) And the later form of judgment entered on June 5 did not affect the appealability of the trial court's March 13 order. (*Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 994, 997 [order granting anti-SLAPP motion is an appealable order, and later judgment of dismissal serves no purpose]; *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 70 [judgment of dismissal "had no effect on the finality of the underlying anti-SLAPP order"].)

The question remains, however, whether the Danko Appellants' appeals were timely. Danko and the Danko Meredith Firm are differently situated on this issue because they filed their notices of appeal on different dates. The key date is April 17, 2020, when Danko electronically served notice of entry of the court's March 13, 2020 ruling.[3] Under rule 8.104(a)(1)(B) of the California Rules of Court,[4] the deadline to notice a timely appeal is "60 days after the party filing the notice of appeal serves or

---

[3] Electronic service is permitted (§ 1013, subd. (g)), and "electronic service . . . is deemed complete at the time of the electronic transmission of the document . . ." (§1010.6, subd. (a)(4)(A)), but does not extend the time to file a notice of appeal (§ 1010.6, subd. (a)(4)(B)(iii)).

[4] Undesignated references to rules are to the California Rules of Court.

is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment." Under rule 8.104(e), a judgment within the meaning of this rule includes "an appealable order if the appeal is from an appealable order." And under rule 8.108(g)(1), "If an appellant timely appeals from a judgment or appealable order, the time for any other party to appeal from the same judgment or order is extended until 20 days after the superior court clerk serves notification of the first appeal."

Applying these timing rules, the Danko Appellants had until June 16, 2020, under rule 8.104(a)(1)(B) to notice an appeal from the court's March 13, 2020 order, as extended under rule 8.108(g)(1) to July 1, 2020, if, as occurred here, one of them met the initial deadline but the other did not. Both notices of appeal are therefore timely. Given our conclusions that the Danko Appellants have properly challenged the court's March 13, 2020 mootness ruling and that they timely noticed their appeals in an effort to do so, we have jurisdiction to proceed. We turn, then, to the merits.

## B. *Merits*

We must now decide whether a trial court is required to rule on the merits of the anti-SLAPP motion as it relates to the movant's entitlement to attorney fees, where a voluntary dismissal has been entered and there is no pending request for fees. Our review is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### 1. Background Principles

The background principles here are well-established and familiar. Section 425.16 "authorizes a special motion to strike meritless claims early in the litigation if the claims 'aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).) Anti-SLAPP motions are ' "intended to resolve

7

quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." ' " (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 818.)  The anti-SLAPP statute entitles a prevailing anti-SLAPP movant in most cases to recover his or her attorney fees and costs as of right.  (§ 425.16, subd. (c)(1); *Liu, supra*, 69 Cal.App.4th at p. 750.)  Procedurally, "[t]here are three ways the special motion to strike attorney fee issue can be raised.  The successful defendant can:  make a subsequent noticed motion as was envisioned by defendant in this case; seek an attorney fee and cost award at the same time as the special motion to strike is litigated, as is often done; or as part of a cost memorandum." (*American Humane Assn. v. Los Angeles Times Communications* (2001) 92 Cal.App.4th 1095, 1103; see *Melbostad v. Fisher, supra*, 165 Cal.App.4th at p. 992.)

### 2.  *Law Offices of Andrew L. Ellis v. Yang*

In resolving the issue posed by these appeals, we draw guidance from *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869 (*Yang*), which addresses a closely related though not identical issue.  In *Yang*, the defendants filed an anti-SLAPP motion and the plaintiff subsequently filed a voluntary dismissal.  (*Id.* at p. 874.)  The trial court stated that the voluntary dismissal did not prevent it from ruling on the anti-SLAPP motion, and granted the motion.  (*Ibid.*)  The defendants subsequently filed a fees motion under section 425.16, subdivision (c).  (*Yang*, at p. 874.)  On its own motion for reconsideration, the trial court denied the anti-SLAPP motion, and then at the defendants' request took the fees motion off calendar.  (*Id.* at p. 875.)  The appellate panel vacated the order denying the anti-SLAPP motion, as the trial court lacked jurisdiction to consider it.  (*Id.* at pp. 876, 882.)  It explained:  "Upon the proper filing of a request to voluntarily dismiss a matter, the trial court loses jurisdiction to act in the case, 'except for the limited purpose of awarding costs and statutory attorney fees.' " (*Id.* at

p. 876.)  In other words, the panel held, "the trial court continues to have jurisdiction over the case for purposes of deciding if the plaintiffs are responsible for attorney fees and costs, but not to rule on the anti-SLAPP motion."  (*Id.* at p. 879.)  Under this holding, the trial court "only had jurisdiction to thereafter entertain a motion brought by defendants for attorney fees and costs."  (*Id.* at p. 881.)

As in *Yang*, we conclude here that because there was no pending fee request, the trial court only had jurisdiction to entertain a subsequent motion for fees, not to decide the merits of the anti-SLAPP motion.  The *sole* request in the Danko Appellants' anti-SLAPP motions was for an order striking the complaint and each of its causes of action.  After Catlin's voluntary dismissal, the request to decide the anti-SLAPP motion was moot; the trial court could not strike a complaint that Catlin had already voluntarily dismissed.  (*Yang*, *supra*, 178 Cal.App.4th at pp. 879, 881.)  The trial court was also justified in declining to rule on the Danko Appellants' anti-SLAPP motion for the purposes of establishing entitlement to a request for fees, as no such request had yet been made.  To conclude otherwise would require the court to have issued an advisory opinion.  (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 ["The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions."].)

The reason Judge Fineman gave for declining to reach the merits of the two anti-SLAPP motions pending before her—mootness—was not wrong, but her focus was on the wrong branch of justiciability law.  The problem here was that the issue of attorney fees was unripe, not that it was moot.  "Witkin, with characteristic clarity, distinguishes the two concepts thusly:  Unripe cases are '[t]hose in which parties seek a judicial declaration on a question of

9

law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 21, p. 85.) Moot cases, in contrast, are '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' (*Id.* at p. 86.)" (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 96.) The ripeness doctrine is "rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes." (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 170.) That is, in effect, what the Danko Appellants claim they were entitled to obtain—general guidance on an abstract issue that might arise at some point in the future, but that had not yet arisen.

### 3. *Liu v. Moore*, *Pfeiffer Venice Properties v. Bernard*, *Tourgeman v. Nelson & Kennard*, and *Kyle v. Carmon*

None of the authority cited by the Danko Appellants persuades us to the contrary. In *Liu*, defendants filed a third party cross-complaint against Deborah Moore. (*Liu*, *supra*, 69 Cal.App.4th at p. 749.) Moore filed an anti-SLAPP motion and the defendants voluntarily dismissed their cross-complaint as to her. (*Ibid.*) Moore then filed a motion for fees under section 425.16, subdivision (c). (*Liu*, at p. 749.) The trial court denied her fees motion, finding that Moore could not be a prevailing party where the motion to strike was moot. (*Ibid.*) The appellate panel reversed the order denying Moore's fees motion, concluding that she was entitled to have the merits of her anti-SLAPP motion heard as a predicate to a determination of her motion for attorney fees. (*Id.* at p. 751.) We agree with *Liu* that the trial

10

court may rule on the merits of the anti-SLAPP motion as it relates to a defendant's entitlement to fees *where there is a pending request for fees*.[5] Here, however, unlike the anti-SLAPP movant and fee applicant in *Liu*, the Danko Appellants had yet to make any such request.

*Liu* cuts against the Danko Appellants, not in their favor. The Danko Appellants argue that, because the mooting of its anti-SLAPP motion effectively made Catlin the prevailing party, they could not go forward with a request for fee recovery without an anti-SLAPP ruling in their favor. But that premise is incorrect. *Liu* explicitly refutes it. (*Liu, supra,* 69 Cal.App.4th at pp. 749, 751.) Moreover, Judge Fineman confirmed at the March 13, 2020 hearing that the Danko Appellants could still proceed with a fees motion if they chose to do so. In light of *Liu*, we have our doubts about whether the Danko Appellants truly believed they were not authorized to file a fees motion, especially after being told they could do so, but that is neither here nor there. The fact is there was never a prevailing party determination against them—in January 2020, in March 2020, in April 2020, or at any

---

[5] We note that *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107 reached a contrary conclusion that after a plaintiff's voluntary dismissal in the face of a defendant's anti-SLAPP motion, section 425.16, subdivision (c) fees may be awarded on a discretionary basis if the defendant realized its litigation objectives, without regard to the merits of the anti-SLAPP motion. Later decisions have disagreed with *Coltrain* and held that a court must rule on the merits of the anti-SLAPP motion because a defendant is entitled to fees under section 425.16, subdivision (c) as of right, but if, and only if, a suit is a SLAPP. (*Liu, supra,* 69 Cal.App.4th at pp. 752–753; *Tourgeman, supra,* 222 Cal.App.4th at pp. 1456–1457; *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218.) We disagree with *Coltrain* and agree with these later decisions that a ruling on the merits of an anti-SLAPP motion is required as a predicate to an award of fees under section 425.16, subdivision (c), provided that, as we hold in this case, a timely fees motion is filed.

point.  Absent a ruling on the merits, the prevailing party on an anti-SLAPP motion had yet to be determined.

In *Pfeiffer*, another case relied upon by the Danko Appellants, the defendants filed a motion for fees under section 425.16 after Pfeiffer's complaint had been dismissed.  (*Pfeiffer Venice Properties v. Bernard*, *supra*, 101 Cal.App.4th at pp. 213–214.)  The trial court ruled that it did not have jurisdiction to award fees.  (*Id.* at p. 215.)  The appellate panel reversed, concluding that the defendants were entitled to a ruling on the merits of their anti-SLAPP motion in order to determine their right to attorney fees.  (*Id.* at pp. 218–219.)  Again, the trial court was required to do so because the defendants had a pending fees motion.  (*Ibid.*)  So too in *Tourgeman*, a third case sited by the Danko Appellants where the defendants had filed a fees motion after plaintiff voluntarily dismissed his action against them.  (*Tourgeman*, *supra*, 222 Cal.App.4th at p. 1451.)  The trial court considered whether the complaint fell within the anti-SLAPP statute in granting defendants' fees motion.  (*Id.* at p. 1455.)  The appellate panel agreed with the method of the trial court's ruling, but concluded that the action was protected by an exception to the anti-SLAPP statute and thus defendants were not entitled to an award of fees.  (*Id.* at pp. 1458, 1468.)

Finally, in *Kyle*, a fourth case cited by the Danko Appellants, the plaintiff voluntarily dismissed the complaint after the defendant filed an anti-SLAPP motion.  (*Kyle v. Carmon*, *supra*, 71 Cal.App.4th at p. 906.)  *Kyle* is not explicit about whether the anti-SLAPP motion included a request for fees, but the trial court's order both struck the complaint *and* awarded defendant her attorney fees and costs (without specifying an amount).  (*Id.* at p. 917.)  The appellate panel reversed the order insofar as it struck the complaint, but affirmed insofar as it awarded fees and costs, as the trial court

12

was permitted to adjudicate the merits of the anti-SLAPP motion in order to award those fees and costs. (*Id.* at p. 919.) Given that the trial court not only considered entitlement but *awarded* the defendant fees and costs, it is logical to infer that the defendant had made some request for fees prior to that ruling. Even if she had not made any such request, nothing in *Kyle* suggests that the trial court has a *duty* to determine entitlement to fees even in circumstances where there is no fee request before it.

### 4. *American Humane Assn. v. Los Angeles Times Communications*, *Chinn v. KMR Property Management*, and Policies Behind the Anti-SLAPP Statute

In addition to their specific reliance on *Liu*, *Pfeiffer*, *Tourgeman* and *Kyle*, the Danko Appellants advance two arguments more generally in support of their position, each of which we reject. First, citing *American Humane Assn.* for the idea that they had three procedural options to seek recovery of fees, two of which allowed them to request fees after their anti-SLAPP motion was heard and decided, they argue that Judge Fineman erred by requiring them to file their fees motion along with their anti-SLAPP motions. That is indeed what the Danko Appellants invited her to do, but it is not what she did. Nothing Judge Fineman said or did *required* the Danko Appellants to proceed via any of the three modes of seeking fee recovery outlined in *American Humane Assn. v. Los Angeles Times Communications*, *supra*, 92 Cal.App.4th at page 1103, or foreclosed any of those procedural routes. Had the Danko Appellants chosen to file a subsequent motion for fees, the parties now agree, as do we, that Judge Fineman had jurisdiction to entertain that motion, so long as it was timely.

To the extent the Danko Appellants rely on *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175 for the proposition that a party can split its fee request into two parts—one for an order on entitlement, and one

13

for an award of fees—we agree that they could have done so here, but for the reasons stated above, we conclude *Chinn* is inapplicable and does not require the court to decide the merits of a moot anti-SLAPP motion in the absence of a pending fees motion preserving that issue as a live controversy. The fact is they never made a motion seeking attorney fees, in the form of a *Chinn*-type motion seeking solely a ruling on entitlement to fees, or a motion seeking a ruling on entitlement along with a fee award. To provide a basis for Judge Fineman to address the merits of their anti-SLAPP motions, all the Danko Appellants had to do was file a noticed motion in conformance with the California Rules of Court (rules 3.1110–3.1113) seeking a fee award, a ruling on fee entitlement, or both, but they deliberately chose not to do that. And when advised by Judge Fineman at the hearing on March 13 that she would rule on entitlement to fees only if a fees motion was presented, the Danko Appellants stubbornly stuck to their position that she had a duty to rule without a pending motion. They made no claim that they had, in effect, already filed such a motion. They simply insisted they did not need to file one.[6]

---

[6] Justice Brown apparently sees no point to requiring a formal motion for fees because "everyone involved—the Danko Appellants, Catlin, and the trial court—understood that the Danko Appellants wanted the ruling on the anti-SLAPP motions as the first step toward recovering fees." (Conc. & diss. opn. of Brown, J., *post*, at p. 3.) The idea that a motion for recovery of attorney fees may be deemed filed along with an anti-SLAPP motion, even though the movant fails to comply with the formal requisites for filing a motion addressing fees, is inconsistent with the procedural scheme established by the California Rules of Court for recovery of attorney fees by motion. (Rule 3.1702(a), (b)(1), and (c)(1).) These rules expressly contemplate the formality of "notice of motion." (See *Hardie v. Nationstar Mortgage LLC* (2019) 32 Cal.App.5th 714, 720 [affirming denial of fee request by party that obtained temporary injunctive relief under statute authorizing

14

Second, couching their argument in broad policy terms, the Danko Appellants argue the underlying purposes of the anti-SLAPP statute support their right to a determination of entitlement to fees before proceeding with a fees request. Of course, it is beyond question that the anti-SLAPP statute must be "construed broadly" in order "to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (§ 425.16, subd. (a); *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) That is fundamental. But the statute also reflects a policy interest in protecting litigants from the filing of meritless anti-SLAPP motions.[7] To that end, section 425.16, subdivision (c) not only authorizes fee recovery for a party who is a prevailing anti-SLAPP movant, but also for a party who defeats such a motion upon the court's finding that the "motion to strike is frivolous or is solely intended to cause unnecessary delay." Such an award is made pursuant to section 128.5, which states: "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) Conduct meriting sanctions under this standard must be objectively frivolous (*Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1070) and subjectively

prevailing party to recover attorney fees "because [it] was not brought in a properly noticed motion"].)

[7] Although the paramount policy objective of deterring litigation designed to chill protected speech is more frequently cited in the anti-SLAPP case law, the courts (e.g., *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 994–1003, summarizing cases) and the Legislature (§ 425.17, subd. (a)) have also expressed concern about misuse of the statute.

15

undertaken in bad faith (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 132–141).[8]

The Danko Appellants' proposed procedure of affording anti-SLAPP movants in a voluntarily dismissed case a free preview of their entitlement to fees before choosing to make any request for fees runs contrary to the countervailing policy favoring those targeted with frivolous anti-SLAPP motions. In the procedural circumstances we have here, the interests underlying the anti-SLAPP statute are optimally balanced by ensuring that an anti-SLAPP movant must decide whether to proceed with a standalone request for fees in the face of uncertainty about whether the court will award fees to it as the prevailing party, or rule against it because its anti-SLAPP motion was frivolous and taken in bad faith. Because the fee-triggering standard under section 128.5 is a demanding one, generally that should be a modest hurdle to overcome. We express no view about how it might apply here, but we find it notable that Judge Fineman pointedly suggested that the Danko Appellants consider carefully whether they "really want[ed]" to proceed with a fees request.

The Danko Appellants protest that filing an attorney fees motion would be inefficient for them. They argue that "[t]he anti-SLAPP statute, from the perspective of the SLAPP-victim[s] is supposed to be economic, efficient, and expedient." In their view—which of course skips a step, since we do not yet know whether they are "SLAPP victim[s]"—Judge Fineman's refusal to rule

---

[8] See, e.g., *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454 (*Carpenter*). The provision in section 425.16, subdivision (c) for fees to a prevailing anti-SLAPP respondent who is forced to fend off a bad faith, objectively baseless section 425.16 motion was part of the original anti-SLAPP statute and has remained unchanged. (Stats. 1992, ch. 726, § 2, pp. 3523–3524.)

16

on the merits of their anti-SLAPP motions in these procedural circumstances imposes on them "a wasteful exercise in picayune pleading practice requiring amended motions to address nitpicking objections." Here, the Danko Appellants lose sight of what was most efficient for the court. Any civil litigator who has gone to the trouble of preparing the requisite separate statement in support of a summary judgment motion (§ 437c, subd. (b)(1), (3)) or a motion to compel discovery (rule 3.1345) understands that, sometimes, what is most efficient for the court is not what is most efficient for lawyers, to cite only two routine examples. And in any event, the task Judge Fineman suggested here was not literally redundant. She appears to have believed that, if these anti-SLAPP movants went to the trouble of thinking about whether the preparation of a fees motion was truly worthwhile, such a motion may never be filed, saving everybody some unnecessary work. This was not "avoid[ance] . . . [of judicial] duty to rule on a properly presented motion by cryptically predicting a ruling without making one." (Conc. & diss. opn. of Brown, J., *post*, at p. 5.) It was wise docket management.

### 5. Rule of Court 3.1702(a)

Next, the Danko Appellants argue that Judge Fineman improperly deprived them of the guaranteed minimum amount of time they should have had under rule 3.1702 for preparation of an attorney fees motion following a ruling on entitlement to fees. Based on the words in rule 3.1702(a) stating that "[s]ubdivisions (b) and (c) apply when the court determines entitlement to the fees, or the amount of fees, or both," the Danko Appellants contend that, in cases where an anti-SLAPP movant elects to defer the filing of an attorney fees motion, there is a triggering event for the time to file such a motion—the date of a ruling on entitlement to fees—and beginning from that date forward a party seeking fees has at least 60 days to prepare and file its fees motion. Implicit in Judge Fineman's view that she would only address

17

the merits of the anti-SLAPP motions if a subsequent attorney fees motion were filed, the Danko Appellants argue, is the belief she could shorten the time allowed to file such a motion to "zero."

We give the Danko Appellants points for creativity, but reject the argument. They cherry-pick an isolated portion of rule 3.1702(a), and read far more into the rule than is actually there. To begin with, this proposed interpretation contradicts the plain language of rule 3.1702(a), which applies "when the court determines entitlement to the fees, the amount of the fees, *or both*." (Rule 3.1702(a), italics added.) In addition, it cannot be reconciled with cases where the determination of entitlement to and the award of fees was made in a single ruling. (See, e.g., *Tourgeman*, *supra*, 222 Cal.App.4th at pp. 1455, 1457–1458.) And, most fundamentally, it is unsustainable when parsed against the entirety of rule 3.1702, read as a whole. To illustrate this point, we quote expansively from rule 3.1702 in the margin, with pertinent portions of the rule italicized, because only by taking the full structure of the rule and its subdivisions into account is the purpose of the language the Danko Appellants focus upon clear in context.[9]

---

[9] Rule 3.1702 reads in pertinent part as follows:

(a) Application

Except as otherwise provided by statute, this rule applies in civil cases to claims for statutory attorney's fees and claims for attorney's fees provided for in a contract. *Subdivisions (b) and (c) apply when the court determines entitlement to the fees, the amount of the fees, or both . . . .*

(b) Attorney's fees before trial court judgment

(1) Time for motion

*A notice of motion to claim attorney's fees* for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—*must be served and filed within the time for filing a notice*

18

Rule 3.1702 divides requests for awards of attorney fees into two groups. The first group includes fee requests that require some preliminary judicial determination—either on "entitlement" or "amount" or both—and may be recovered either by motion or by cost memorandum. (Rule 3.1702 (a)–(c).) The second group includes fee requests that are "fixed without the necessity of a court determination" and may be recovered only by cost memorandum. (Rule 3.1702(e).) The language regarding "entitlement" from rule 3.1702(a) relied upon by the Danko Appellants simply describes the difference between these two groups. The term "entitlement" in subdivision (a) adds nothing substantive to rule 3.1702, subdivisions (b) and (c). It is simply part of a precatory guide to application of the rule as a whole. Nor does rule 3.1702(a) displace the traditional mode of seeking attorney fees by postjudgment cost memorandum (§ 1033.5, subd. (a)(10)), a procedural approach to fee recovery that has its own timetable separate and

---

*of appeal under rules 8.104 and 8.108 in an unlimited civil case or under rules 8.822 and 8.823 in a limited civil case. . . .* [¶] . . . [¶]
(c) Attorney's fees on appeal
    (1) Time for motion
       *A notice of motion to claim attorney's fees* on appeal—other than the attorney's fees on appeal claimed under (b)—under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, *must be served and filed within the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case or under rule 8.891(c)(1) in a limited civil case. . . .* [¶] . . . [¶]
(e) Attorney's fees fixed by formula
    If a party is entitled to statutory or contractual attorney's fees that are fixed without the necessity of a court determination, *the fees must be claimed in the memorandum of costs.*
(Italics added.)

apart from rule 3.1702.[10]  This, of course, is why one of the three options for fee recovery in anti-SLAPP cases as outlined in *American Humane Assn.* is by cost memorandum.

As it applies in this case, what is most important about rule 3.1702 is the timing scheme it establishes for filing attorney fee motions. Rule 3.1702(b)(1) and (c)(1) specify a bifurcated set of deadlines that establish an "an outer time limit after judgment within which statutory fee claims may be made." (*Carpenter, supra,* 151 Cal.App.4th at p. 466, italics omitted.) These deadlines are triggered by the "conclusion of the litigation" (*id.* at p. 468), a terminus point typically marked by the "entry of judgment or dismissal" (*id.* at p. 467) in the trial court, including—as in this case—voluntary dismissal (*Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 427 (*Sanabria*) [voluntary dismissal "effectively a 'judgment'[;]. . . time for filing a motion for attorney fees commences upon service of notice of entry of dismissal"]).  Under this timing scheme, the clock starts to run from either the service of notice of entry of judgment or dismissal (starting a 60-day clock), or if no such notice is given, the entry of judgment or dismissal (starting a 180-day clock).  (Rules 3.1702(b)(1), 8.104(a)(1)(A)–(C).)  This scheme directly contradicts the argument that the date of a court's ruling on "entitlement" to fees (rule 3.702(a)) starts the clock.  That date has no bearing on when the deadline period begins running.  Based on the language, structure, and case law construing rule 3.1702, we therefore reject the

---

[10] Rule 3.1700(a)(1) ("A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first.").

contention that there is some guaranteed minimum time period between a ruling on entitlement to attorney fees and its deadline for filing an attorney fees motion.

Underlying the Danko Appellants' rule 3.1702 argument that Judge Fineman impermissibly deprived them of some "right" to a ruling on entitlement to attorney fees before filing a fees motion is their apparent wish to have advance assurance that, if they filed such a motion, they would win. When faced with the voluntary dismissal of a suspected SLAPP suit, the Danko Appellants contend that they were "not required to presciently pray for a ruling on the merits." We do not suggest that prescience is required (thoughtful anticipation of contingent events in litigation is good practice, to be sure), but in order to obtain a ruling on the merits of an anti-SLAPP motion that is mooted by a voluntary dismissal, a party who believes it was the victim of a SLAPP suit must still formally request an award of attorney fees. If no motion seeking fee recovery was filed concurrently with the anti-SLAPP motion, a request for fees must be made by motion or by cost memorandum after the dismissal. We do not think that is too much to ask of anti-SLAPP movants. All we hold here is that, before seeking fee recovery, a litigant whose anti-SLAPP motion has been mooted is entitled to no greater guidance from the court than any other party who must weigh the advantages and disadvantages of seeking relief for a perceived wrong.[11]

---

[11] Citing *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, a case in which the appellate court addressed an anti-SLAPP step-two issue in the first instance on appeal after reversing the sole ground for the trial court's denial of an anti-SLAPP motion at step one of the anti-SLAPP analysis (*id.* at pp. 1353–1355), the Danko Appellants argue that we have discretion to decide their anti-SLAPP motions on appeal, and that we should do so. Having concluded the trial

Pointing out that some of the fees incurred for the Danko Appellants' anti-SLAPP motion were incurred after Catlin's voluntary dismissal on January 17, 2020, Justice Brown cites *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, and *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, for the proposition that rule 3.1702(b), does not apply to "postjudgment fees." (Conc. & diss. opn. of Brown, J., *post*, at pp. 8–9.) She then argues that even if the time spent preparing reply papers and appearing at the hearing could have been claimed by filing a supplemental declaration to capture such fees, the need to prepare such a supplemental filing adds complexity and burden to what should be a streamlined process of fee recovery under section 425.16, subdivision (b)(1). (Conc. & diss. opn. of Brown, J., *post*, at pp. 8–9.) Respectfully, we think that Justice Brown's analysis here overreads *Crespin* and *George* and that her concern about added burden is overstated.

"The history of rule 3.1702 indicates that the 'outside' time limit for claiming prejudgment statutory attorney fees was intended to be entry of a *final* judgment—not entry of a prejudgment appealable order" (*Carpenter*, *supra*, 151 Cal.App.4th at p. 468, italics added), as confirmed by the fact that rule 3.1702(c) addresses claims for recovery of attorney fees on appeal following remittitur. Consistent with that outer boundary, *Crespin* and *George* stand for the proposition that the rule does not apply to the recovery of fees incurred after a judgment or appealable order is final and no longer subject to appeal. Those cases involved attorney fees incurred long after an appealable judgment (*Crespin*) or order (*George*) had reached the point of finality, leaving the timeliness of the fee claims at issue to be governed by

court had no obligation to decide the issue of entitlement to attorney fees as a predicate to a yet-to-be-filed motion for such fees, we see no point in doing so ourselves.

equitable principles wholly outside the scheme of rule 3.1702.[12] That has nothing to do with the scenario before us. The parties vigorously dispute the meaning of rule 3.1702 here, but no one contends it does not apply at all. And in any event, even if there was a need to file a supplemental "cleanup" declaration capturing additional fees incurred up to and through the date of the hearing on a fees motion, that is a routine task in attorney fees motion practice, typically used to bring fully up to date all recoverable fees for preparing the motion itself (sometimes called "fees on fees"). Thus, had the Danko Appellants followed the suggestion Judge Fineman made and filed a fee motion, a supplemental declaration would have been necessary in the ordinary course, adding no new burden.

---

[12] *Crespin v. Shewry, supra,* 125 Cal.App.4th at pages 271–272 (where claimed attorney fees were incurred to defend motion seeking dissolution or modification of permanent injunction, and fees were sought nine years after appellate affirmance of final judgment imposing the injunction, fee claim under § 1021.5 fell outside the purview of rule 3.1702 and still timely because its consideration worked no unfair prejudice); *George v. Shams-Shirazi, supra,* 45 Cal.App.5th at pages 139–142 (following *Crespin* in the context of claim for recovery of attorney fees incurred to defend requested modification of an appealable child custody order, where fees were claimed as sanctions under Fam. Code, § 271 more than a year after the custody order became final); cf. *Carpenter, supra,* 151 Cal.App.4th at pages 459, 468 (§ 425.16, subd. (c)(1) fee motion seeking recovery of fees incurred to defend anti-SLAPP motion two years after entry of order denying anti-SLAPP motion, was timely where fees were sought after issuance of remittitur following affirmance of anti-SLAPP denial on interlocutory appeal, before entry of final judgment; timing rules set forth in rule 3.1702 do not begin to run until "entry of judgment at the conclusion of the litigation").

### 6. **Summary of Merits Analysis**

Summing everything up, we conclude as follows. An anti-SLAPP movant need not file a fee request along with its motion, but if it chooses to defer such a request there is no guarantee it will receive a ruling on fee entitlement in advance of the filing of a later fees motion or request for fees by cost memorandum. In this case, Catlin's dismissal of the complaint mooted the action—including the Danko Appellants' anti-SLAPP motions— because there was no pending fee motion or other outstanding request for relief by any party. At that point, although the issue of attorney fees was nonjusticiable for lack of ripeness, Judge Fineman still had jurisdiction to rule on a postdismissal motion for fees, or a request for fee recovery via cost memorandum, so long as the request for fees was timely filed. With the case in this posture, the Danko Appellants had plenty of time to seek fee recovery and see the issue decided, if they chose to take the risk of doing so. But they were not entitled to an advisory opinion on whether that was a wise course.

In the final analysis, *Sanabria, supra*, 92 Cal.App.4th 422, is controlling. Under the holding in that case, the Danko Appellants, having elected not to file section 425.16, subdivision (c)(1) motions along with their anti-SLAPP motions, were entitled to seek recovery of their attorney fees by (1) filing cost memoranda no later than February 6, 2020 (15 days after service of notice of the entry of Catlin's voluntary dismissal) (*Sanabria*, at pp. 425–426); or (2) filing motions for attorney fees no later than March 23, 2020 (60 days after service of notice of the entry of Catlin's voluntary dismissal) (*id*. at pp. 426–429). They met neither deadline. Accordingly, because the Danko Appellants failed to seek recovery of attorney fees by motion or cost memorandum in timely fashion, they waived any claim to a fee

award.  (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 928–929.)[13]

## IV. DISPOSITION

The trial court's March 13, 2020 order is affirmed.  For both appeals, Catlin shall recover its costs.  (Rule 8.278(a)(1), (2).)

STREETER, Acting P. J.

I CONCUR:

ROSS, J.[*]

---

[13] The Danko Appellants filed a request for judicial notice seeking to apprise us of subsequent procedural history in related litigation showing that, following voluntary dismissal of the complaint in this case, (1) Catlin refiled this action in federal court, but eventually amended its federal complaint to name only the Danko Meredith Firm as a defendant and to drop the fraud cause of action, and (2) the assigned federal district judge, Hon. Haywood S. Gilliam, Jr., denied the Danko Meredith Firm's anti-SLAPP motion and granted in part and denied in part the Danko Meredith Firm's motion to dismiss the amended complaint.

We granted this request for judicial notice on April 14, 2021, subject to a later determination of relevance.  The only aspect of the subsequent history outlined in these judicially noticed materials that we now find noteworthy is the following comment by Judge Gilliam in his order ruling on the Danko Meredith Firm's motion to dismiss:  "The Court notes that the [Danko Meredith Firm] does not appear to dispute that it received the inadvertent double-dip settlement payment, but advances a theory apparently premised in significant part on the venerable legal principle of 'finders, keepers.'  The Court urges the parties to consider whether they can resolve this matter between themselves without further litigation."  Judge Fineman made a similar comment at the March 13, 2020 hearing in this case.  The continued pursuit of these appeals indicates that these observations apparently went unheeded, no doubt because the prospect of fee recovery remained an obstacle to amicable resolution.  Hopefully, that will change.

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

BROWN, J., Concurring and Dissenting.

I concur with the majority that we have jurisdiction over the Danko Appellants' appeals, so I join fully in part III.A. of the majority opinion's analysis. I share in particular the majority's view that the Danko Appellants "could have simplified matters and avoided the need for these appeals by filing a separate fees motion that included the same arguments from their anti-SLAPP motions on the merits." (Maj. opn. *ante*, at p. 5.) As three courts have now observed, litigation should not have been necessary to resolve the Danko Appellants' dispute with Catlin, and the Danko Appellants likewise could have avoided the need for this appeal with far less effort. (Maj. opn. *ante*, at p. 25, fn. 13.)

Nonetheless, I respectfully disagree with the majority view that the trial court properly refused to rule on the merits of the Danko Appellants' anti-SLAPP motions, for three reasons. First, I disagree with the majority opinion that the Danko Appellants did not request a ruling on their entitlement to fees. (Maj. opn. *ante*, at p. 9.) The majority opinion asserts that the sole request in the Danko Appellants' anti-SLAPP motions was for an order striking the complaint. (Maj. opn. *ante*, at p. 9.) But the motions also addressed the issue of fees, stating that the Danko Appellants would file separate motions for attorney fees following the grant of their motions and citing to *American Humane Assn. v. Los Angeles Times Communications* (2001) 92 Cal.App.4th 1095, 1104. That decision held that a defendant whose anti-SLAPP motion asked for a declaration of entitlement to fees was allowed to defer the documentation of fees and costs incurred until a second motion. (*Id.* at pp. 1101–1104.) And of course, "any SLAPP defendant who brings a successful motion to strike is entitled to *mandatory* attorney fees" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131, italics added), so the granting of an

1

anti-SLAPP motion inherently serves as a ruling on entitlement. (Code Civ. Proc.[1], § 425.16, subd. (c).)

In my view, the most reasonable interpretation of the statutory scheme and the moving papers is that the Danko Appellants intended their anti-SLAPP motions to establish their entitlement to fees, with an eye toward subsequent motions that would establish the amount of the fees award. In fact, this is precisely how Catlin interpreted the anti-SLAPP motions. The first line of Catlin's combined opposition to the anti-SLAPP motions, which it filed more than a month *after* serving notice of its voluntary dismissal, stated, "Following Plaintiff's voluntary dismissal . . . , Defendants' anti-SLAPP motions remain pending in this Court *for purposes of their claim that they are entitled to fees and costs as prevailing parties.*" (Italics added.)

Were Catlin's opposition not sufficient to demonstrate that the parties knew what remained at issue following the voluntary dismissal, during the hearing on the motions, the court engaged in the following colloquy with Danko on behalf of the Danko Appellants:

> THE COURT: So what is it that you want?
> MR. DANKO: I want you to rule on the motion and --
> THE COURT: Because you want attorneys' fees?
> MR. DANKO: Because we're -- yes. We are --
>
> THE COURT: Okay. So I anticipated that.

Danko then explicitly stated that he wanted the court to rule on the anti-SLAPP motions as a "predicate," meaning the predicate for a request for an award of fees. The record thus confirms that the Danko Appellants asked for a ruling on their anti-SLAPP motions to establish their entitlement to fees—and that everyone *knew* what they were asking for.

---

[1] All statutory references are to the Code of Civil Procedure.

Because I read the Danko Appellants' moving papers as seeking a ruling on their entitlement to fees, I believe they satisfied the standard motion practice requirements in the Rules of Court[2] that the majority opinion cites. (Maj. opn. *ante*, at pp. 14–15 & fn. 6.) Even if their motion did not satisfy some formality, such a deficiency can be waived or forfeited by a failure to object. (*Hammond Lumber Co. v. Bloodgood* (1929) 101 Cal.App. 561, 563–564 ["It is the well-settled law of this state that, where both parties appear and contest a motion, without objection in the trial court, such appearance is a waiver of . . . the defect in the notice to specify all of the relief asked and given, if the motion and order went beyond the terms of the notice"].) I would hold that Catlin did so here, given that everyone involved— the Danko Appellants, Catlin, and the trial court—understood that the Danko Appellants wanted the ruling on the anti-SLAPP motions as the first step toward recovering fees. The majority opinion's requirement that the Danko Appellants file an additional motion requesting the same relief that they had already made clear they wanted therefore elevates form over substance.[3] This is contrary to the requirement that we construe the anti-SLAPP statute broadly to effectuate its purpose of allowing defendants "to

---

[2] All further references to rules are to the California Rules of Court.

[3] As an aside, I am unpersuaded by the majority opinion's distinction of *Kyle v. Carmon* (1999) 71 Cal.App.4th 901. The majority opinion states that even if *Kyle* allowed a party to secure a ruling on entitlement to fees without making a separate request (which, as I read *Kyle*, it did), "nothing in *Kyle* suggests that the trial court has a *duty* to determine entitlement to fees." (Maj. opn. *ante*, at p. 13.) But the majority opinion holds not just that a trial court has no duty to rule on the merits of an anti-SLAPP motion after a voluntary dismissal, but that a trial court *cannot* make such a ruling in absence of a formal written request. The majority opinion is therefore inconsistent with the outcome in *Kyle*.

resolve quickly and relatively inexpensively meritless lawsuits that that threaten free speech on matters of public interest." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639.)

My second reason for not joining the majority opinion is that I am concerned its approach will lead to wasteful duplication of effort and inefficient litigation. The majority opinion holds the Danko Appellants should have filed new motions for attorney fees after the trial court denied their anti-SLAPP motions as moot. The bulk of such fees motions, of course, would be dedicated to establishing the Danko Appellants' entitlement to fees. This would undoubtedly entail cutting and pasting the arguments from their anti-SLAPP motions into their fees motions. Catlin and the Danko Appellants would then repeat the exercise with their respective opposition and reply briefs. Meanwhile, contrary to the trial court's statement about not wanting to do all of the work twice, the trial court's workload would not change. Even if it had ruled on the merits of the anti-SLAPP motions to determine the Danko Appellants' entitlement to fees, it would need to address that issue only once. It is undisputed that a ruling on the merits of the Danko Appellants' anti-SLAPP motions would have established their entitlement to fees (§ 425.16, subd. (c)(1)), leaving only the issue of the amount of fees to be resolved in a later motion (assuming they prevailed).

The trial court also said it was uncertain whether the Danko Appellants would actually move for an award fees if the court declared them entitled to do so. Few people, if told they were entitled to reimbursement for their attorneys' fees from a party who targeted them with a meritless lawsuit designed to chill the exercise of their rights to free speech or petition, would turn down the opportunity. That is especially true of the Danko Appellants,

4

who, to put it charitably, demonstrated in the underlying lawsuit a willingness to push the boundaries of what they were legitimately entitled to recover from their opponent in litigation. (See maj. opn. *ante*, at p. 2.) And indeed, the availability of fees is one of the primary reasons a defendant chooses to file an anti-SLAPP motion in response to a complaint, rather than challenging the pleading via a demurrer, motion for judgment on the pleadings, or other device. (See, e.g., Burke, Cal. Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2019) § 2:97 ["The fee-shifting of attorney's fees and costs is another hallmark of the anti-SLAPP statute"].)

The majority opinion similarly asserts that the filing of a standalone fees motion would not have been redundant or inefficient because it would have afforded the Danko Appellants the opportunity to reconsider whether such a motion was worthwhile. (Maj. opn. *ante*, at pp. 16–17.) The same could be said of any motion, but this does not allow a trial court to avoid its duty to rule on a properly presented motion by cryptically predicting a ruling without making one. (§ 170 ["A judge has a duty to decide any proceeding in which he or she is not disqualified"]; Cal. Code of Jud. Ethics, canon 3B(1) [same].) If the trial court believed the anti-SLAPP motions had no merit, it should have denied them and declared Catlin entitled to fees if the motions were frivolous, instead of postponing the issue for another day and requiring the parties to redo their work.

The majority opinion is correct that what is efficient for the court is not necessarily what is most efficient for lawyers, but the literal duplication of effort that the majority approves offers no advantages to the trial court and is not efficient for either of the parties. Moreover, this approach of kicking the ruling down the road is inconsistent with the purpose of the anti-SLAPP statute. The rationale of *Liu v. Moore* (1999) 69 Cal.App.4th 745 applies with

equal force here.  "The purpose of section 425.16 is clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance' (§ 425.16, subd. (a)). Under the trial court's reasoning, a defendant in a SLAPP suit who has been dismissed from that suit after filing a section 425.16 motion to strike, must jump through an additional hoop to obtain attorney's fees and costs—a motion under section 128.7—even though section 425.16 already provides for an award of those expenses.  Such a requirement . . . would prolong both the defendant's predicament and the plaintiff's outrageous behavior." (*Liu*, at p. 750.)

The majority opinion claims it was appropriate to require the Danko Appellants to file a separate fees motion to avoid giving them a "free preview" of the merits of their anti-SLAPP motion and instead force them to incur the risk that the trial court would declare the anti-SLAPP motion frivolous and award fees instead to the opposing party.  (Maj. opn. *ante*, at p. 16.)  The majority's concern seems misplaced.  As the majority opinion requires formality in the moving party's request for relief in an anti-SLAPP motion, by parity of reasoning, it is not clear how Catlin could have secured a ruling that it was entitled to fees merely by opposing the Danko Appellants' fees motions. More importantly, the Danko Appellants incurred the risk of owing fees to Catlin as soon as they filed their anti-SLAPP motions in the first place.  As noted above, had the trial court believed the anti-SLAPP motions were frivolous, it could have so ruled, which then would have invited Catlin to file a motion for an award of a specific amount of fees.  There was no need to require the Danko Appellants to file a second, redundant motion to force them to run this risk.

6

My final reason for not joining the majority opinion relates to its application of rule 3.1702. The majority opinion cogently and quite rightly rejects the Danko Appellants' argument that the rule gave them a guaranteed minimum amount of time to prepare a fees motion after a ruling on their entitlement to fees, and I agree with much of that discussion. (Maj. opn. *ante*, at pp. 17–23.) But the majority opinion goes further and concludes that the rule 3.1702 period for requesting fees began to run when Catlin served notice of the entry of its voluntary dismissal. *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 427 (*Sanabria*) did so hold outside the anti-SLAPP context, because the court concluded a voluntary dismissal entirely resolves the litigation as to a dismissed defendant. When a defendant has filed an anti-SLAPP motion before the voluntary dismissal, I question whether the logic of *Sanabria* applies. Even if it does, following *Sanabria* here is not as straightforward as the majority opinion asserts, nor does it lead to the majority opinion's conclusion that the Danko Appellants are entirely out of time to file new fees motions.

For one thing, the majority opinion's application of *Sanabria* and rule 3.1702 in this case means the Danko Appellants would have had to file a cost memorandum by February 6, 2020, 15 days after service of notice of the entry of voluntary dismissal, even though that date was over a month *before* the trial court denied the anti-SLAPP motions as moot. (Maj. opn., *ante*, at p. 24.) This hardly seems fair. The majority opinion's calculation of the deadline for a fees motion is somewhat more generous, since it gave the Danko Appellants 10 days after the denial of the anti-SLAPP motions to file a separate fees motion. But this is still a far cry from the 60 days rule 3.1702 normally provides after the conclusion of litigation.

7

There is a possibility for even greater unfairness in future cases. Trial court workloads and scheduling issues mean the hearing date for a motion can often be months after it was filed, and continuances can extend the hearing dates even further. It is therefore not hard to imagine a scenario in which (1) a defendant files an anti-SLAPP motion; (2) the plaintiff promptly voluntarily dismisses, serves notice, and then opposes the motion; and (3) the motion is heard more than 60 days after the voluntary dismissal. In such a scenario, under the majority opinion's rule, a defendant who loses the gamble that the trial court will find the requested relief in an anti-SLAPP motion sufficiently clear to trigger a duty to rule on the merits will be completely deprived of the right to fees. The only way to avoid such unfairness would be for the defendant to file, before the trial court rules, a second set of papers, cutting and pasting its anti-SLAPP arguments in a largely redundant motion for fees. Competent counsel will in most cases choose the latter course, leading once more to duplicated work and increased costs for litigants.

Additionally, rule 3.1702 specifies the deadline only for a "motion to claim attorney's fees for services *up to and including the rendition of judgment* in the trial court." (Rule 3.1702(b)(1), italics added.) Even if *Sanabria* is correct that a voluntary dismissal qualifies as a judgment for these purposes, several subsequent decisions have pointed out, based on a textual and historical analysis of rule 3.1702, that the rule by its terms does not apply to requests for postjudgment fees. (*George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 139, 141 [rule 3.1702 "says nothing about *postjudgment* fees"; because sanctions "were awarded for attorney fees incurred *after* entry of the court's . . . judgment, rule 3.1702 does not apply"]; *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 265 [rule 3.1702's predecessor "was not intended to govern the time for bringing motions for fees arising from post-final-

8

judgment activities, such as litigation over modifications to a permanent injunction"].) This distinction is significant here because the only fees the Danko Appellants incurred before Catlin's voluntary dismissal were for the drafting of the initial anti-SLAPP motion papers. Their fees for the replies and appearance at the hearings came after the dismissal. But the Danko Appellants were entitled to fees for the entire anti-SLAPP motions, including their requests for fees. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1141 [anti-SLAPP movants entitled to fees on fees].) Even under the majority opinion's approach, they would still be entitled to file motions to collect the fees they incurred after the voluntary dismissal, as well as a clean-up declaration or motion for fees for the filing of the separate fees motions. (*612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1285 [trial court erred by not allowing party the opportunity to request additional postjudgment fees incurred after initial fee request made]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 1002 [it is preferable for a party to submit an additional declaration before a hearing to recoup fees incurred after drafting initial motion papers, but a party can also file a second motion to do so]; Cal. Attorney Fee Awards (Cont.Ed. Bar 3d ed. 2010) § 11.61 [citing *612 South* and *Doppes*].)

My alternative to all of the above is straightforward. Because the granting of an anti-SLAPP motion serves as a ruling that the movant is entitled to fees, and because the Danko Appellants requested a ruling on entitlement—as both Catlin and the trial court recognized—I would hold that the trial court erred. The Danko Appellants' entitlement to fees remained at issue despite Catlin's voluntary dismissal, so their anti-SLAPP motions were not moot and the trial court was obligated to rule on them to the extent that the motions related to fees. (Cf. *White v. Lieberman* (2002) 103 Cal.App.4th

9

210, 220 ["The trial court ruled that because it sustained [defendant]'s demurrer without leave to amend, his motion to strike [plaintiff]'s complaint was moot.  But a defendant who prevails in an anti-SLAPP motion is entitled to attorney's fees.  (§ 425.16, subd. (c).)  The trial court therefore erred in determining that [defendant]'s motion was moot"]; *Kyle, supra,* 71 Cal.App.4th at p. 919 [affirming order awarding attorney fees to anti-SLAPP defendant after plaintiff's voluntary dismissal].)

Because it is not certain whether the Danko Appellants would prevail and be entitled to an award of fees, it is unnecessary to decide how rule 3.1702 applies here.  But for the guidance of the parties on remand, I would instruct that when an anti-SLAPP motion is filed before a voluntary dismissal, the ruling on the merits of the anti-SLAPP motion—not the voluntary dismissal—is the judgment for purposes of rule 3.1702, because the disposition of the anti-SLAPP motion constitutes the final determination of all substantive issues and ends the litigation.  Accordingly, the deadline for a request for an award of fees would run 60 days after notice of the court's ruling on the merits of the anti-SLAPP motions.

BROWN, J.

10

Trial Court: Superior Court of California, City and County of San Mateo

Trial Judge: Hon. Nancy L. Fineman

Counsel: Danko Meredith, Michael S. Danko, Shawn R. Miller, for
   Defendant and Appellant Danko Meredith Law Firm, Inc.

   Law Offices of Walter C. Cook and Walter C. Cook, for
      Defendant and Appellant Michael S. Danko.

   Clausen Miller, Jay D. Harker, Michael W. Goodin,
      Don R. Sampen, *Pro Hac Vice*, for Plaintiff and Respondent.